PONDER, Judge.
This is a suit for a deficiency judgment in the amount of $2,746.29 plus .attorney’s fees, interest and costs, to which the defendant entered a general denial and then filed a third party demand against his vendor and the manufacturer for a rescission of the sale and the return of the sales price.
On January 29, 1970, Lafayette Motor Company, Inc., a dealer for Chrysler Motors Corporation, sold to Paul M. Bertrand a 1970 Plymouth GTX automobile. This vehicle was described by Bertrand as a high performance automobile with a 440 cubic inch engine equipped with a 6-pack, (described as three, two barrel carburetors) capable of speeds of 150 m.p.h. according to the speedometer of the car. It is undisputed that there were many repairs made to the vehicle as evidenced by the following listing of invoices entered in the record: January 30, 1970, repair alternator; February 2, 1970, repair transmission; February 13, 1970, repair transmission; February 24, 1970, replace short engine; February 26, 1970, repair alternator; March 11, 1970, replace transmission; April 9, 1970, replace voltage regulator; April 10, 1970, repair alternator; July 6, 1970, replace alternator and minor tuneup; July 10,- 1970, replace intake manifold and repair pinion seal; July 20, 1970 remove broken bolt and head for alternator mounting.
When Bertrand became dissatisfied with the automobile and ceased making the payments, Chrysler Credit Corporation filed executory proceedings and the car was seized and sold at a judicial sale. The plaintiff being the highest bidder in the amount of $1,400.00 was adjudicated the vehicle. This suit for a deficiency judgment was then brought. Defendant filed a third party demand for rescission of the sale. The trial court granted judgment on the main demand.
Attached to the petition for deficiency judgment are the sale and chattel mortgage, promissory note and assignment form provided by Chrysler Credit Corporation, all in regular form which Bertrand signed. The note is made in the total sum *352 of $4,809.24. It was stipulated that as of August IS, 1970, Bertrand owed $4,146.29, together with attorney’s fees provided by the note. It was also stipulated that the deficiency, after the proceeds of the Sheriff’s sale had been deducted, amounted to $2,746.29. The trial judge found that there was no appreciable dispute on this main demand and that Chrysler Credit Corporation was entitled to recover against Bertrand on its petition for a deficiency judgment. We find no error in this conclusion.
The trial court also granted judgment on the third party demand, granting rescission of the sale and judgment in the sum of $691.19 representing the equity in the vehicle traded in and the cash down payment.
Third party defendants advance as error the trial court’s holding that there were defects in the vehicle sufficient to amount to redhibitory defects, contending that any defects were the result of abuse and misuse by Bertrand. They also allege the trial court erred in holding the vehicle was defective at the time it was repossessed, since all defects had been corrected at the request of and with the full consent of Bertrand. Finally, they contend the original plaintiff, Chrysler Credit, should be denied recovery on the main demand if there were any redhibitory defects since Chrysler Credit Corporation was not a holder in due course of the promissory note, thus making the defense of redhibition valid against it.
Louisiana Civil Code, Article 2520 provides :
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
Everyone agrees that the automobile is a high performance one and evidently the trial judge found that the use given it was within the purpose for which it was sold. But high performance automobiles are “sensitive machines,” and the “driver must not exceed the red lines,” referring to the lines on the tachometer on the car showing the upper limits of its designed use.
While Bertrand denied that he had abused the vehicle, the defendants, Lafayette Motor Company and Chrysler Motors Corporation, offered the testimony of several expert witnesses to the effect that the number and frequency of the repairs were caused by excessive speed in low gear and misuse of the vehicle through “overreving” the engine and improper shifting.
It is true that a number of repairs were necessary but upon analysis it becomes evident that when those caused by abuse are eliminated, the remaining ones were minor, easily repaired at no expense to the purchaser, and are not cause for rescission.
The first repair, made on January 30, 1970, was to a “shorted” alternator rotor, a minor defect.
The repairs of February 2, February 13, March 11, and one of uncertain date were to the transmission. The mechanic and the experts testified that they carefully inspected every part of the automatic transmission and found no defective parts. They attribute the ripping out of the second band to Bertrand’s practice of exceeding the tachometer red line while in first gear and then rapidly shifting into second gear, a clear abuse of the vehicle.
The repairs to the alternator made on February 26, April 10, July 6 and July 20 were explained as being the result of the engine being raced at excessive speeds, putting undue strain on the structure holding the alternator.
The uncontradicted testimony of the experts, who based their conclusion on the fact that the connecting rods broke in the middle, was that the replacement of the “short” engine was necessitated by exceeding the tachometer red line while driving in low gear.
*353 The replacement of the intake manifold on July 10 and of the voltage regulator on April 9 were minor repairs.
All the above repairs were made without cost to Bertrand.
Although Bertrand first denied racing the automobile despite the fact that he often raced on drag strips, he finally admitted he might have raced the car on some back roads “a couple of times.” Bertrand also admitted to the salesman that he exceeded sixty miles per hour in first gear. This was specifically prohibited for this vehicle.
Furthermore, Bertrand admitted that the car was repaired and had been running well for some time before he terminated payments. He turned the car back because he “just got tired of the car,” and did not “want it no more.”
We, therefore, find manifest error and hold that the third party plaintiff is not entitled to rescission.
This finding obviates the necessity of considering the contention that Chrysler Credit Corporation was not a holder in due course.
For the foregoing reasons the judgment on the main demand is affirmed, and the judgment on the third party demand is reversed, all at the cost of the defendant and third party plaintiff.
Affirmed in part, reversed in part, and rendered.
FRUGÉ, J., respectfully dissents and assigns written reasons.